UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

February 2018 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR No. CR-18 00124-MWF |
| Plaintiff, | I N D I C T M E N T |
| v. | [18 U.S.C. § 1341: Mail Fraud; 18 U.S.C. § 1956(a)(1)(A)(i): Money Laundering; 18 U.S.C. § 2(b): Causing An Act To Be Done; 18 U.S.C. §§ 982(a)(7), 981(a)(1)(C), 28 U.S.C. § 2461(c): Criminal Forfeiture] |
| PHILIP JAMES LAYFIELD, aka "Philip Samuel Pesin," | |
| Defendant. | |

The Grand Jury charges:

COUNT ONE

[18 U.S.C. §§ 1341, 2(b)]

A.  INTRODUCTORY ALLEGATIONS

At all times relevant to this Indictment:

1.  Defendant PHILIP JAMES LAYFIELD, also known as "Philip Samuel Pesin" ("LAYFIELD"), was an attorney licensed by the State Bar of California.  On or about January 24, 2018, defendant LAYFIELD was suspended from the practice of law in the State of California. Defendant LAYFIELD was also licensed in the State of California as a Certified Public Accountant.

MA:ma

2.  Until in or about June 2017, defendant LAYFIELD owned and operated a law firm known as Layfield & Barrett, APC ("L&B"). L&B had offices in downtown Los Angeles and in Irvine, California, among other places.

3.  L&B and defendant LAYFIELD specialized in representing plaintiffs in personal injury cases. In connection with such representation, defendant LAYFIELD would cause L&B to prepare and enter into a standard retainer agreement with each L&B client (the "Retainer Agreement"). The Retainer Agreement provided, among other things, that the client would grant to L&B a power of attorney that authorized L&B to endorse settlement checks made payable to the client, or made jointly payable to L&B and the client, and to negotiate and deposit settlement checks into an Interest On Lawyers Trust Account ("IOLTA") without further authorization from the client.

4.  L&B's Retainer Agreement also spelled out the compensation to which L&B would be entitled for representing the client in a personal injury case. The Retainer Agreement provided that L&B would receive a fee for legal services in the amount of 33 1/3 percent of the gross amount of settlement recovered on behalf of the client, but if L&B were to file a lawsuit on behalf of the client, L&B's fee would increase to 40 percent of the gross amount of settlement recovered. In many cases, this six and two-thirds percent difference resulted in hundreds of thousands of dollars in additional fees due to L&B and an equivalent reduction in net settlement fees due to the client.

5.  Defendant LAYFIELD maintained sole signatory authority over the following bank accounts: an L&B IOLTA account at Esquire Bank

bearing an account number ending in -2012 (the "IOLTA 2012 Account"), into which settlement funds were to be deposited and then promptly disbursed to the client and not improperly commingled with funds belonging to defendant LAYFIELD or L&B, pursuant to rules governing the ethical conduct of attorneys, including California Rule of Professional Conduct 4-100; L&B's general operating account at Esquire Bank bearing an account number ending in -2004 (the "2004 Operating Account"); and a personal account held in the name of Philip J. Layfield at USAA Bank bearing an account number ending in -1924 (the "Layfield Personal USAA Account").

6. In connection with California State Bar proceedings, defendant LAYFIELD stated that L&B's predicted gross revenue for 2016 was between $14 million and $18 million, with costs of approximately $10 million. Defendant LAYFIELD also stated that L&B had secured a line of credit for $4 million that would enable L&B to continue operations while L&B awaited the receipt of case disposition and settlement proceeds.

7. Defendant LAYFIELD's financial projections for L&B for 2016 were wrong. In a filing submitted to the State Bar on or about October 29, 2017, defendant LAYFIELD stated that "[d]uring the first half of 2016, productivity [at L&B] did not rise, but, rather fell, as people were not meeting financial targets, [and] there was a general lack of performance, all of which, collectively caused the L&B Firm to lose money." L&B's expenses included employee compensation, payroll taxes, litigation costs, and so-called "back-end" operating costs incurred for hiring India-based office and litigation support.

8. At a time unknown to the Grand Jury, defendant LAYFIELD

decided to close L&B, sold his property in the United States, and relocated to Costa Rica. In order to accomplish these ends, defendant LAYFIELD took steps to generate as much cash as possible by, among other things: (a) filing unnecessary litigation in order to trigger an increase in attorney's fees due L&B under the Retainer Agreement; (b) settling personal injury cases without advising L&B clients that he had done so; (c) dodging L&B client inquiries about the status of cases and payment of settlement proceeds; (d) delaying the payment of net settlement proceeds due to clients by purporting to take additional steps to preserve client funds, such as creating trusts that were, in fact, unnecessary; (e) converting settlement funds due to L&B and defendant LAYFIELD's clients for his own benefit; and (f) transferring assets to shell entities that defendant LAYFIELD caused to be created in order to dodge his creditors. Further to accomplish these ends, defendant LAYFIELD took steps to transfer L&B's and its clients' assets, including net settlement proceeds received and due clients, to bank accounts that defendant LAYFIELD caused to be opened, that were controlled by defendant LAYFIELD, and that defendant LAYFIELD intended would be out of the reach of L&B, its creditors, and its clients.

B.  THE FRAUDULENT SCHEME

9.  Beginning on or about a date unknown to the Grand Jury, but at least as early as in or about June 2016, and continuing through at least on or about February 24, 2018, in Orange County, within the Central District of California, and elsewhere, defendant LAYFIELD, together with others known and unknown to the Grand Jury, knowingly and with the intent to defraud, devised, participated in, executed and attempted to execute a scheme and artifice: (a) to defraud J.N.

as to material matters in connection with the delivery of legal services; and (b) to obtain money and property from J.N. by means of materially false and fraudulent pretenses, representations, and promises, and the concealment of material facts in connection with the delivery of legal services.

10. The fraudulent scheme operated, in substance, in the following manner:

    a. Defendant LAYFIELD agreed to represent J.N. as J.N.'s attorney to recover damages suffered from a motor vehicle accident that occurred in Orange County, California, on or about February 24, 2016.

    b. Defendant LAYFIELD caused to be prepared, and required that J.N. execute, the Retainer Agreement.

    c. Defendant LAYFIELD represented, promised, and maintained the pretense in his dealings with J.N. that he would diligently represent J.N.'s interests and remit to J.N. the net proceeds of any settlement of her personal injury matter. In truth and in fact, as defendant LAYFIELD then well knew, defendant LAYFIELD would not diligently represent her interests and would not remit the net proceeds of any settlement of her personal injury matter.

    d. Defendant LAYFIELD filed an unnecessary lawsuit on behalf of J.N. whose sole purpose was to increase L&B's fee under the Retainer Agreement and commensurately reduce J.N.'s net settlement proceeds.

    e. Defendant LAYFIELD concealed from J.N. that L&B was mired in internal conflicts; that the firm was suffering from financial difficulty; and that defendant LAYFIELD intended to close L&B, convert settlement proceeds due J.N., cause L&B to not pay its

creditors, and relocate to Costa Rica, where defendant LAYFIELD believed he would be beyond the reach of his and L&B's creditors.

        d.    Defendant LAYFIELD caused the gross settlement proceeds of approximately $3.9 million for J.N.'s case to be deposited into the IOLTA 2012 Account, and then caused some of those funds to be transferred to the 2004 Operating Account and then transferred by wire to the Layfield Personal USAA Account for the benefit of defendant LAYFIELD.

        e.    Further, to execute the scheme to defraud, defendant LAYFIELD made and caused to be made materially false and misleading representations and promises to J.N. for the purpose of lulling J.N. into believing that the net settlement proceeds were safe and that any delays in receiving them were temporary. The purpose of these misleading representations and promises was to lull J.N. into a false sense of security in order to dissuade J.N. from further investigating why J.N. had not received J.N.'s net settlement proceeds, and to further enable LAYFIELD to continue absconding with J.N.'s net settlement proceeds. For example, defendant LAYFIELD falsely told J.N. that J.N. would receive the net proceeds after the execution of a trust instrument, whereas, in truth and in fact, defendant LAYFIELD then knew the trust instrument was unnecessary and that he would not pay the costs of preparing the trust instrument even though he promised to do so. Defendant LAYFIELD also caused the issuance and mailing to J.N. of a $25,000 check, which he falsely represented was an "advance" against J.N.'s net settlement proceeds in order to further delay inquiries from J.N. about her remaining settlement proceeds. In fact, as defendant LAYFIELD then knew, there would be no further payment of the remaining net proceeds to J.N.

C.  USE OF THE MAIL

11.  On or about March 9, 2017, within the Central District of California and elsewhere, defendant LAYFIELD, for the purpose of executing and attempting to execute the above-described scheme to defraud, willfully caused an envelope addressed to J.N. containing a cover letter and check for $25,000 (check number 0016555106) to be placed in an authorized depository for mail matter to be sent and delivered by the United States Postal Service, according to the directions thereon.

## COUNTS TWO AND THREE

[18 U.S.C. §§ 1956(a)(1)(A)(i), 2(b)]

12. The Grand Jury repeats, realleges, and incorporates by reference paragraphs 1 through 8 and 10 and 11 of this Indictment as if set forth herein in their entirety.

13. As used herein, "Specified Unlawful Activity" means any act or activity constituting an offense involving mail fraud, in violation of Title 18, United States Code, Section 1341, as charged in Count One of this Indictment.

14. On or about the following dates, in Orange County, within the Central District of California, and elsewhere, defendant LAYFIELD, knowing that the property involved in each of the financial transactions described below represented the proceeds of some form of unlawful activity, conducted and willfully caused others to conduct the following financial transactions involving interstate commerce, which transactions in fact involved the proceeds of Specified Unlawful Activity, with the intent to promote the carrying on of such Specified Unlawful Activity:

| COUNT | DATE | FINANCIAL TRANSACTION |
|---|---|---|
| TWO | 9/20/16 | Transfer of approximately $92,701.70 from L&B Payroll account at Esquire Bank, ending in account number 0878, to "Gusto," a cloud-based payroll service. The approximately $92,701.70 in the L&B Payroll account derived from the IOLTA 2012 Account, which, at that time, held J.N.'s settlement proceeds. |
| THREE | 9/20/16 | Transfer of approximately $165,778.38 from L&B Payroll account at Esquire Bank, ending in account number 0878, to "Gusto," a cloud-based payroll service. The approximately $165,778.38 in the L&B Payroll account derived from the IOLTA 2012 Account, which, at that time, held J.N.'s settlement proceeds. |

FORFEITURE ALLEGATION

[18 U.S.C. §§ 982(a)(7), 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

15. Pursuant to Fed. R. Crim. P. 32.2(a), notice is hereby given to defendant LAYFIELD, that the United States will seek forfeiture as part of any sentence in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), in the event of defendant's conviction under Count One of this Indictment.

16. Upon conviction, defendant LAYFIELD shall forfeit to the United States the following property:

    a. all right, title, and interest in any and all property, real or personal, constituting or derived from any proceeds obtained, directly or indirectly, as a result of any offense set forth in Count One of this Indictment; and

    b. To the extent such property is unavailable for forfeiture, a sum of money equal to the total value of the property described in subparagraph a.

17. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), defendant, if so convicted of Count One of this Indictment, shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as a result of any act or omission of a defendant, the property described in the preceding paragraph, or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the Court; (d) has been substantially diminished in

//

value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION TWO

[18 U.S.C. § 982(a)(1) and 28 U.S.C. § 2461(c)]

18. Pursuant to Fed. R. Crim. P. 32.2(a), notice is hereby given to defendant that the United States of America will seek forfeiture as part of any sentence in accordance with Title 18, United States Code, Section 982(a)(1) and Title 28, United States Code, Section 2461(c), in the event of defendant's conviction under Counts Two or Three of this Indictment.

19. Upon conviction, defendant shall forfeit to the United States the following property:

    a. All right, title, and interest in any and all property, real or personal, involved in such offense, and all property traceable to each offense set forth in Counts Two or Three of this Indictment of which defendant is convicted; and

    b. To the extent such property is not available for forfeiture, a sum of money equal to the total amount of property involved in each offense for which defendant is convicted. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), defendant, if so convicted of an offense charged in Counts Two or Three of this Indictment, shall forfeit substitute property up to the value of the amount described in paragraph 19, if, by any act or omission of said defendant, the property described in paragraph 19(a), or any portion thereof, (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of this court; (d) has been substantially diminished in

value; or (e) has been commingled with other property that cannot be divided without difficulty.

A TRUE BILL

/S/
Foreperson

NICOLA T. HANNA
United States Attorney

LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division

RANEE A. KATZENSTEIN
Assistant United States Attorney
Chief, Major Frauds Section

STEPHEN A. CAZARES
KRISTEN A. WILLIAMS
Assistant United States Attorneys
Deputy Chiefs, Major Frauds Section

MARK AVEIS
EDDIE A. JAUREGUI
Assistant United States Attorneys
Major Frauds Section