Anthony M. Solis, SBN 198580
A Professional Law Corporation
23679 Calabasas Road, Suite 412
Calabasas, CA 91302-1502
213-489-5880 - Phone
213-489-5923 - Fax
Anthonysolislaw@gmail.com

Attorney for Defendant
Philip Layfield

United States District Court

Central District of California

Western Division

| | | |
|---|---|---|
| United States of America, | ) | Case No.: 18-cr-00124-MWF |
| | ) | |
| Plaintiff, | ) | Defendant Philip Layfield's Reply to Government's Opposition to Motion to Set Bail |
| v. | ) | |
| Philip Layfield, | ) | |
| Defendant. | ) | Date: June 18, 2018<br>Time: 1:30 a.m.<br>Hon. Michael W. Fitzgerald |

    Defendant Philip Layfield, by and through his attorney of record, Anthony M. Solis, submits the Reply to the Government's Opposition to Defendant's Motion to Set Bail.

Dated: June 15, 2018        Anthony M. Solis,
A Professional Law Corporation

*Anthony M. Solis /s/*
By: Anthony M. Solis
Attorney for Defendant
Philip Layfield

---

**Reply to Government's Opposition to Motion to Set Bail**

1

## Memorandum of Points and Authorities

The government has now filed three pleadings following the defendant's submission of points and authorities in support of his position to set conditions of release. *See* Dkt. ## 34, 38, 40.  This pleading will address the issues about which the Court appeared to be concerned at the previous hearing as well as some of the assertions made by the government.

In sum, the Court should set bond on reasonable terms as it is clear that there is no threat to the community and to the extent a risk of flight exists, it can be mitigated or offset by conditions that the Court can set.

### A. The Proposed Sureties

The defendant has two sureties that offered to post real property, each of whom has a signficant equity interest to offer to the Court. Each has now been verified. The remaining sureties agree to post unsecured affidavits of surety.

**i. David C. and Mary L. Layfield.**  David is the defendant's uncle. Mary is his wife. Their home is located in Millsboro, Delaware. They have one mortgage in the amount of $167,000  taken out in February of 2011. The property worth approximately $264,000 leaving approximately $99,000 in available equity.

**ii. Brent A. Layfield and Kimberly Reinoehl.** Brent is the defendant's cousin. Kimberly is his wife. Their home is located in Milton, Delaware. They have a 1st mortgage in the amount of $164,000 and a 2nd in the amount of $15,000 both taken out in May of 2015. The property worth approximately $304,000 leaving approximately $125,000 in available equity.

**iii. James Layfield**. James is the defendant's father. He has offered a $100,000 affidavit of sureties or a $100,000 cash deposit with the Court. A retiree, $100,000 is a significant portion of his net worth.

**iv. Steve Massas.** Mr. Massas is an uncle of Philip Layfield. He is willing to sign an unsecured surety bond in an approximate amount of $50,000. Mr. Massas is retired, and is of modest means. Mr. Massas is confident that Mr. Layfield's

relationship with him is so close that he would not do anything jeopardize Mr. Massas' welfare or that of his family.

      **v. Shirley Long**. Defendant's aunt. She had offered her home as security, however, the equity value is insufficient to offer for a secured bond. She is willing to sign an unsecured affidavit of sureties in an amount to determined by the Court.

        **vi. Christine Layfield**. The defendant's wife lives in Delaware with family. She is currently receiving public assistance and food stamps. She has offered to surrender her passport and that of her daughter. The passports are currently in the custody of undersigned counsel. Neither she nor her daughter has any citizenship, residency or claim thereto in any other country.

    **B. The "Delaware Homestead" Issue.**

*Without any basis, evidence or research*, at the bail hearing on June 6, 2018, the government floated the idea that a Delaware Homestead exemption would prevent the government from foreclosing on real property of the sureties that offered to help the defendant. Now, the government has fully researched the issue and concluded that the law in Delaware could not stop the government from foreclosing on the properties in the event that the defendant violated his bond terms. *See* Govt. p. 4, lines 14-19.

At the previous hearing, the government also asserted *without any evidentiary basis whatsoever* that he defendant "could" have advised his family members about a way to evade the government's foreclosure of their property in bankruptcy. While absolutely *no evidence* exists for this assertion, and the government did not even claim any such evidence existed for this assertion, it nevertheless floated the idea in an desperate attempt to chill the Court from setting a bond and to smear the defendant.

Furthermore, the government asserted at the hearing that the defendant was unaware of the fact that he would be charged. Therefore, when he was arrested in New Jersey, he would have had to (1) have contacted all his relatives while in custody; (2) predict that a court, either in New Jersey or California would require real property; and, (3) advise them to evade this specific law, all while in custody on presumably

recorded calls. The family members, all law abiding citizens, two of whom are law enforcement offcers, would have to agree to go into bankruptcy in an illegal conspiracy to assist the defendant to flee from the country so he could violate his bond terms with impunity. Setting aside the fact that the government has absolutely no basis in fact for such an assertion, the impossibility of this sequence of events reveals the absurdity of the government's assertion and the lengths to which it will offer the Court bald assertions in order to keep the defendant detained.

**C.   Waiver of Extradition.**

Mr. Layfield agreed to execute a waiver of extradition from any country. As the government indicates in its Opposition, the government has been unable to identify an enforceable waiver that foreign courts are likely to accept. Nevertheless, the defendant offered such a waiver as a good faith gesture to indicate that he has no intention to flee, under any combination of circumstances. However, as set forth in the defendants original bond pleading, Costa Rica has an extradition treaty with the United States.

**D.   Danger to the Community Assertions.**

The government persists in its assertion that the defendant is a threat to the community. However, individuals who allege a "threat" are located in Costa Rica.

**i. R.M.**

R.M. offered an unsworn letter.[1] In the letter, the provenance of which is unclear, describes conduct before Mr. Layfield was even aware of any criminal charges, according to the government. It is clear that the letter is merely a labor dispute, that R.M. is upset that he was not paid promised wages and was brought from

---

[1] The defendant continues to object to this "evidence" on hearsay grounds as well as the grounds that the proffered evidence violates defendant's confrontation rights under the Sixth Amendment and *Crawford v. Washington,* 541 U.S. 36 (2004). While bail hearings are unique, the Ninth Circuit has identified a confrontation right at post-conviction hearings such as supervised release or probation revocation–when the defendant has been deemed guilty. *See, United States v. Camito*, 177 F.3d 1166, 1170 (9th Cir. 1999) Here, the defendant is presumed innocent.

India to Costa Rica promised a job for a company or employer that failed.² His "letter" offers more questions than answers and even the alleged "conditional" threat is without basis.³ Mr. Layfield has no criminal history. There is no evidence that he has ever owned, used or possessed any firearms in the U.S. or Costa Rica. The assertion that he posed any threat to R.M.– who remains in Costa Rica– is absurd.

### ii. J.M.

J.M.'s statement is also patently absurd and clearly does not establish any danger to the community posed by Mr. Layfield.⁴ First and foremost, the government makes no mention how J.M. is important to its case or why Mr. Layfield would care enough to harm him, even if he had the inclination to do so.⁵ Apparently, the worst that Mr. Layfield has done to J.M. is "lashing out" verbally, "almost being physically abusive."⁶ The letter is devoid of any facts, circumstances or proof upon which the Court could justify detention.

---

²Layfield was recently served with a Costa Rican labor claim with R.M. as the claimant.

³Equally absurd is the government's and R.M.'s assertion that Layfield "threat[ened] to deport" R.M. Dkt. 38, line 22. According to the government, R.M. is a citizen of India. *Id.* at 23. It is unclear how Mr. Layfield has the power to deport anyone from any country.

⁴Mr. Layfield objects to the J.M. "Letter" on the same basis as set forth as the R.M. letter.

⁵J.M. asserts that Layfield will flee the United States, "live comfortably with those millions" (presumably the same "millions" the government has failed to identify even exist. If J.M. were copied on emails about money stashed in foreign bank accounts, surely the government would have produced them in discovery. It has not.) J.M. also suggests that a Costa Rican hitman will be hired by Layfield for $200 to kill him. J.M. clearly draws on the same empty bank of evidence upon which the government draws.

⁶As a point of clarification "almost" physically abusive is equal to: not physically abusive.

### E. Mr. Layfield's Court Appearances

At the June 6, 2018 bail hearing, the government also expressed concern–without any basis whatsoever–that if permitted to live in Delaware, the defendant would spend victim funds in order to travel back and forth to court. While the government conceded at the hearing that it has not identified any foreign or domestic bank accounts which contain victim funds, or Layfield's access thereto, the government and the Court are well aware that: (1) the defendant has qualified for appointed counsel both in the District of New Jersey and the Central District of California and (2) 18 U.S.C. § 4285 provides for the US Marshal to transport indigent defendants to court in the event they are unable to pay for transport. Inasmuch as the defendant qualifies for the services of appointed counsel, there are resources available to ensure he makes his court appearances. Furthermore, should the Court permit a waiver of appearance or telephonic appearance for non-critical hearings or status conferences–the cost to the public can be kept to a minimum. Nevertheless, the extent to which the defendant has access to "victim funds" is a phantom concern for which the government has provided zero evidentiary basis.

### Conclusion

A careful analysis of the § 3142 factors reveals that a set of conditions can be set to ensure that Mr. Layfield makes all of his appearances. A bond should be set in this matter.

Dated: June 15, 2018                          Anthony M. Solis,
                                              A Professional Law Corporation


                                              *Anthony M. Solis /s/*
                                              By: Anthony M. Solis