FILED

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

February 2018 Grand Jury

| UNITED STATES OF AMERICA, | CR No. 18-124(A)-MWF |
|---|---|
| Plaintiff, | **F I R S T** |
| | **S U P E R S E D I N G** |
| v. | **I N D I C T M E N T** |
| PHILIP JAMES LAYFIELD,<br>aka "Philip Samuel Pesin," | [18 U.S.C. § 1343: Wire Fraud; 18 U.S.C. § 1341: Mail Fraud; 18 U.S.C. § 1028A(a)(1): Aggravated Identity Theft; 26 U.S.C. § 7201: Attempt to Evade and Defeat Tax; 26 U.S.C. § 7202: Failure to Collect and Pay Over Tax; 26 U.S.C. § 7203: Willful Failure to File Tax Return; 18 U.S.C. § 2(b): Causing An Act To Be Done; 18 U.S.C. §§ 981(a)(1)(C) and 982, 21 U.S.C. § 853(p), 26 U.S.C. § 7301, and 28 U.S.C. § 2461(c): Criminal Forfeiture] |
| Defendant. | |

The Grand Jury charges:

COUNTS ONE THROUGH TWENTY-TWO

[18 U.S.C. § 1343]

A.   INTRODUCTORY ALLEGATIONS

At all times relevant to this First Superseding Indictment:

1.   Defendant PHILIP JAMES LAYFIELD, also known as "Philip

MA:ma

1  Samuel Pesin" ("defendant LAYFIELD"), was an attorney licensed by the

2  State Bar of California and the Bar of the District of Columbia.

3  Defendant LAYFIELD was also licensed in the State of California as a

4  Certified Public Accountant.  Defendant LAYFIELD was a resident of

5  Coto de Caza, California, until in or about June 2017, when he and

6  his family relocated to Costa Rica.

7      2.    From in or about 2011 until in or about June 2017,

8  defendant LAYFIELD owned and controlled law firms that operated under

9  various names (collectively, the "Layfield Firms" or the "Firms")

10 including "The Layfield Law Firm," "Layfield & Wallace, APC," and,

11 from about late 2015 to in or about June 2017, "Layfield & Barrett,

12 APC" ("L&B").  L&B had, at various times, offices in downtown Los

13 Angeles, El Segundo, and Irvine, California; in Park City, Utah; and

14 in Scottsdale, Arizona.

15     3.    On a date unknown to the Grand Jury, but believed to be

16 before in or about August 2016, defendant LAYFIELD caused the

17 formation of a business entity known as "855 Triallawyers.com Kpo

18 Services Private Limited," or a substantially similar name, which

19 defendant LAYFIELD wholly or substantially owned and controlled, and

20 which used the street address 382 N.E. 191st Street, #42308, Miami, FL

21 33179.  This entity purported to provide so-called "back office"

22 litigation support in Bangalore, India, for one or more of the

23 Layfield Firms including L&B.

24     4.    On or about March 20, 2017, defendant LAYFIELD caused the

25 formation of Maximum Legal Holdings, LLC ("MLH"), a Delaware limited

26 liability corporation, of which defendant LAYFIELD was the single

27 member and manager, and which purportedly maintained an office at

28 1875 K Street N.W., Washington, D.C., 20006.  MLH was wholly

controlled by defendant LAYFIELD.  MLH purported to hold various
other business entities and provide legal and litigation support
services.

5.   On or about May 26, 2017, defendant LAYFIELD caused the
formation of Maximum Legal Services, LLC ("MLS"), a Delaware limited
liability corporation, of which defendant LAYFIELD was the single
member, manager, and/or director, and which used the address 382 NE
191st Street, #42308, Miami, FL 33179.  In correspondence with, and
filings submitted to, the Internal Revenue Service ("IRS"), defendant
LAYFIELD provided as MLS' address 1000 N. Green Valley Pkwy 440-312,
Henderson, Nevada, a post office box in a "UPS" or similar
storefront.

6.   On or about September 5, 2017, defendant LAYFIELD caused
the formation of Atlas Legal, LLC ("Atlas"), a Delaware limited
liability corporation with a street address in Washington, D.C.
Defendant LAYFIELD wholly controlled Atlas from Costa Rica.  Atlas
purportedly provided legal services.

7.   L&B primarily represented plaintiffs in personal injury
cases, including cases that the other Layfield Firms had commenced or
for which one or more of the Layfield Firms had been previously
retained.  Several of L&B's clients had suffered catastrophic
physical injuries including brain damage, loss of a limb, or massive
injuries to internal organs, together with financial losses including
wages and future earnings, and pain and suffering, and were facing
hundreds of thousands of dollars in medical expenses as a result of
their injuries.  Such clients retained L&B and other Layfield Firms
to zealously represent their interests, including by recovering
compensation for their injuries and losses, in accordance with the

3

1   ethical and professional responsibilities imposed on L&B, and each of
2   its attorneys, by the California Rules of Professional Conduct, among
3   other laws, rules, and regulations governing the conduct of
4   attorneys.

5       8.    Defendant LAYFIELD had signatory authority over an L&B
6   attorney-client trust account, also called an "Interest On Lawyer's
7   Trust Account" or "IOLTA" account, at Esquire Bank, bearing an
8   account number ending in -2012 (the "IOLTA 2012 Account").  Esquire
9   Bank maintained its headquarters in New York, had a single full-
10  service branch in New York, and did not have any offices or branches
11  in California.  Defendant LAYFIELD's wife, a non-lawyer, was the only
12  other signatory on the IOLTA 2012 Account but she had no control over
13  the management, finances, or operation of L&B.

14      9.    Defendant LAYFIELD knew that the gross settlement proceeds
15  from the disposition of clients' cases were to be initially deposited
16  into the IOLTA 2012 Account, and defendant LAYFIELD directed others
17  at L&B to make such deposits, usually electronically via a system
18  known as "Tellerscan," from L&B to Esquire Bank in New York, and to
19  promptly advise him of the receipt, amount, and client matter or case
20  for which such settlement proceeds had been received.  In one such
21  directive to L&B staff, defendant LAYFIELD wrote that "IOLTA accounts
22  are where settlement funds are deposited and [L&B's] fees and costs
23  are [then] transferred to [an] operating [account,]" and that "IOLTA
24  accounts are used to pay liens, outstanding costs for clients and to
25  issue final disbursement checks [to clients.]"

26      10.   Defendant LAYFIELD also controlled other L&B bank
27  accounts, including L&B's general operating account at Esquire Bank,
28  bearing an account number ending in -2004 (the "2004 Operating

Account"), and an L&B payroll account at Esquire Bank, bearing an account number ending in -0878 (the "Payroll").  Defendant LAYFIELD also owned and controlled several personal accounts, including a personal account held in the name of Philip J. Layfield at USAA Bank, bearing an account number ending in -1924 (the "Layfield Personal USAA Account").

11.    L&B clients typically signed a retainer agreement ("Retainer Agreement"), prepared by L&B or one of its predecessors, that provided that L&B could deposit money, paid after a favorable verdict or upon settlement of a client's case, into a trust account without notice to, or further authorization from, the client.  This provision, coupled with defendant LAYFIELD's control over the IOLTA and other L&B accounts, effectively gave defendant LAYFIELD exclusive control over the disbursement of settlement funds and left clients dependent on L&B to provide notice to the clients that such funds had been received and when such funds would be disbursed.

12.    Defendant LAYFIELD, and other L&B attorneys, were subject to rules governing the practice of law, including then-applicable California Rule of Professional Conduct 4-100 et seq., entitled "Preserving Identity of Funds and Property of a Client," that mandated in pertinent part that:

> (A)  All funds received or held for the benefit of clients by a member or law firm, including advances for costs and expenses, shall be deposited in one or more identifiable bank accounts labelled "Trust Account," "Client's Funds Account" or words of similar import, maintained in the State of California, or, with written consent of the client, in any other jurisdiction where there is a substantial relationship between the client or the client's business and the other jurisdiction.  No funds belonging to the member or the law firm shall be deposited therein or otherwise commingled therewith except as follows:

        (1)   Funds reasonably sufficient to pay bank charges.

        (2)   In the case of funds belonging in part to a client and in part presently or potentially to the member or the law firm, the portion belonging to the member or law firm must be withdrawn at the earliest reasonable time after the member's interest in that portion becomes fixed.  However, when the right of the member or law firm to receive a portion of trust funds is disputed by the client, the disputed portion shall not be withdrawn until the dispute is finally resolved.

   (B)  A member shall:

        (1)   Promptly notify a client of the receipt of the client's funds, securities, or other properties.

        (2)   Identify and label securities and properties of a client promptly upon receipt and place them in a safe deposit box or other place of safekeeping as soon as practicable.

        (3)   Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the member or law firm and render appropriate accounts to the client regarding them; preserve such records for a period of no less than five years after final appropriate distribution of such funds or properties; and comply with any order for an audit of such records issued pursuant to the Rules of Procedure of the State Bar.

        (4)   Promptly pay or deliver, as requested by the client, any funds, securities, or other properties in the possession of the member which the client is entitled to receive.

13.   The Retainer Agreement also spelled out the amount of compensation that L&B would be entitled to receive.  The Retainer Agreement typically provided that the firm would receive a fee for its legal services in the amount of 33 1/3 percent of the gross amount recovered on behalf of the client but, if the firm were to file a lawsuit on behalf of the client, the firm's fee would increase to 40 percent of the gross recovery.  In at least one case, involving L&B client J.N., this small percentage difference resulted in

1   hundreds of thousands of dollars in additional fees due to the firm

2   and a commensurate reduction in settlement proceeds due the client.

3       14.   Other attorneys and law firms ("Referring Attorneys")

4   referred cases to the Layfield Firms, including L&B, in exchange for

5   a fee for the referral.  The Layfield Firms, including L&B, typically

6   agreed to split attorney's fees with the Referring Attorneys and to

7   pay to the Referring Attorneys their share of fees out of the gross

8   funds paid upon the disposition of a given case.  In some cases, one

9   or more of the Layfield Firms entered into agreements to pay so-

10  called "naked" referral fees because defendant LAYFIELD knew that the

11  Referring Attorney did, or would do, little, if any, work on the

12  referred case, and that the Referring Attorney had little, if any,

13  financial risk in the outcome of the case other than to receive

14  nothing if no recovery occurred.

15      15.   Then-applicable California Rule of Professional Conduct 2-

16  200 required that such fee-splitting agreements be in writing

17  ("Referral Agreement") and authorized by the client to ensure that

18  the client was informed of the Referral Agreement and to prevent any

19  resulting increase in total attorney's fees.

20      16.   L&B at times used a third-party bill-paying service called

21  Bill.Com, to which defendant LAYFIELD directed transfers of funds

22  from the IOLTA 2012 Account and other L&B accounts in order to

23  transfer funds to himself and pay various creditors, including L&B's

24  creditors, and L&B clients.  L&B also at times used payroll services,

25  including "Namely" and "Gusto," to which defendant LAYFIELD at times

26  directed or authorized the transfer of funds from L&B accounts,

27  primarily the 0878 Account, in order to pay L&B's payroll.

28      17.   Upon the receipt and deposit of case settlement proceeds

1  into the IOLTA 2012 Account, L&B personnel at times prepared a
2  "closing" or "settlement" statement, or similar document ("Closing
3  Statement") that would purport to itemize the costs and expenses that
4  were chargeable to the settled case.  The Closing Statement showed,
5  among other things, attorney's fees due to L&B (and Referring
6  Attorneys, if applicable), costs and expenses incurred in connection
7  with prosecuting the case, and amounts due lien holders and health
8  care providers whom L&B had agreed to pay from case disposition
9  proceeds pursuant to the Retainer Agreement.  Closing Statements,
10 when prepared, would typically be sent to the client for approval.
11 Three individuals at L&B were typically required to approve the net
12 amount due to a client, with defendant LAYFIELD being the last such
13 individual whose approval was necessary before net funds from the
14 disposition of a case would be disbursed to the client.

15       18.    Beginning in or about 2013, defendant LAYFIELD caused the
16 Layfield Firms to borrow money and obtain cash advances from lenders
17 (collectively, the "Advance Lenders") ostensibly to meet expenses and
18 cover litigation costs advanced on behalf of clients.  One such
19 lender was Advocate Capital, Inc. ("Advocate Capital").  Advocate
20 Capital agreed, on behalf of itself and subordinate lenders, to
21 provide lines of credit to one or more of the Layfield Firms under a
22 "Master Loan and Security Agreement" ("MLSA") and related documents
23 that defendant LAYFIELD signed on behalf of one or more of the
24 Layfield Firms, and whose obligations defendant LAYFIELD personally
25 guaranteed.  Defendant LAYFIELD periodically, usually in or about
26 August of each calendar year of its effect, ratified the MLSA.

27       19.    Pursuant to the MLSA, defendant LAYFIELD, on behalf of one
28 or more of the Layfield Firms, pledged as collateral to secure the

repayment obligations under the MLSA:

> "[a]ll accounts, . . . and all similar rights that [each or any
> of the Layfield Firms] may have of every nature and kind
> including . . . all of [the Layfield Firms'] rights to receive
> payment . . . for legal and other services rendered and to be
> rendered, and for costs and expenses advanced and to be
> advanced, . . . that [each or any of the Layfield Firms] may
> have in and with respect to each and every present and future
> undertaking and/or engagement for legal and other services
> performed and to be performed by [each or any of the Layfield
> Firms]."

20.   On or about December 11, 2015, defendant LAYFIELD prepared
and signed, on behalf of himself and L&B, a letter agreement that
purported to describe the terms of defendant LAYFIELD's employment by
L&B.  Among other things, the agreement provided that

> "[defendant LAYFIELD] will remain [sic] your full-time position
> as CEO, Managing Partner and Director with no reporting
> supervisor.  [Defendant LAYFIELD's] primary duties will be
> managing [L&B's] overall operations and lead trial attorney. . .
> .  [Defendant LAYFIELD] will be paid a salary at the rate of
> $1,000,000 per year, payable on [L&B's] regular payroll dates .
> . . [together with] a monthly car allowance of $2,500 per month
> [sic]. . . .  Employment with [L&B] is for one year and
> automatically renews for an additional year unless terminated in
> writing prior to the expiration of the current year. . . .  All
> forms of compensation referred to in this letter [agreement] are
> subject to all applicable taxes, withholding and any other
> deductions required by applicable law."

B.   THE FRAUDULENT SCHEME

21.   Beginning on or about a date unknown to the Grand Jury,
but at least as early as April 2016, and continuing through at least
in or about August 2018, in Los Angeles and Orange Counties, within
the Central District of California, and elsewhere, defendant
LAYFIELD, together with others known and unknown to the Grand Jury,
knowingly and with the intent to defraud, devised, participated in,
executed, and attempted to execute a scheme and artifice: (a) to
defraud clients, Referring Attorneys, and certain lenders as to
material matters; and (b) to obtain money and property from

individuals and entities by means of materially false and fraudulent
pretenses, representations, and promises, and the concealment of
material facts.

22.   The fraudulent scheme operated, in substance, in the
following manner:

a.   In connection with causing clients to execute Retainer
Agreements, causing L&B to execute certain Referral Agreements, and
continuing to represent clients who had retained L&B, or a
predecessor firm, and clients whose matters had been referred to L&B,
defendant LAYFIELD represented, promised, and maintained the pretense
that he and L&B would (1) zealously and diligently represent clients'
interests and hold, in trust for the benefit of each client, case
disposition proceeds and use those proceeds only as permitted by
applicable laws, rules, and regulations governing the ethical
practice of law; (2) timely remit to clients their net case
disposition funds, including deducting only those costs and expenses
directly attributable to such clients' matters; (3) timely remit to
Referring Attorneys their bargained-for share of attorney's fees; and
(4) cause the timely pay-off of liens and other charges allocable to
clients pursuant to Retainer Agreements so that such clients'
obligations arising from their health care or legal matters at issue
would be satisfied from the clients' case disposition funds and not
linger unresolved against the clients.

b.   In connection with seeking, executing, and ratifying
agreements with Advance Lenders, defendant LAYFIELD represented,
promised, and maintained the pretense that he would disclose and not
omit material facts, and honor his and L&B's agreements to timely pay
their obligations to Advance Lenders, and would not act in a manner

that would jeopardize such Advance Lenders' collateral and their rights to collect.

c.    In truth and in fact, as defendant LAYFIELD then well knew, defendant LAYFIELD misrepresented and concealed material facts from clients, Referring Attorneys, and Advance Lenders, including the following:

(1)    Defendant LAYFIELD would not zealously and diligently represent his clients' interests because, among other things, defendant LAYFIELD would:

(a)    Create conflicts of interest between L&B and its clients by settling and/or forcing the disposition of cases early and/or for less than might have been recovered by, among other things, fabricating weaknesses in the cases and/or the clients' credibility, in order to obtain cash for himself, L&B, L&B's creditors, and other L&B clients whose cases had been settled but whose settlement proceeds defendant LAYFIELD had misappropriated;

(b)    In at least one case, involving client J.N., cause the filing of an unnecessary lawsuit, the sole purpose of which was to increase by hundreds of thousands of dollars L&B's fee under the Retainer Agreement and commensurately reduce the client's net settlement proceeds;

(c)    Settle and attempt to settle at least one case, involving client S.J., without the client's knowledge and consent, and then cause the filing of a Notice of Settlement in the Superior Court so as to mislead the Court and cause the Court to consider dismissing the case, thereby jeopardizing the client's opportunity for a more favorable recovery through litigation; and

1              (d)     Cause an L&B employee, V.M., to

2   fraudulently induce unsophisticated L&B clients, including a guardian

3   *ad litem* for a minor whose father had died in a vehicle accident,

4   whom L&B had represented in the matter of Pineda v. County of

5   Riverside, et al., Riverside Superior Court case nos. RIC1507590 and

6   1600228, to sign new Retainer Agreements, not for the purpose of

7   concluding the matter for the benefit of the clients, but, instead,

8   for the purpose of supporting defendant LAYFIELD's application for an

9   approximately $700,000 litigation advance from Advance Lender US

10  Claims Opco LLC.  In such application, among other things, defendant

11  LAYFIELD fraudulently omitted reference to an obligation to pay a

12  referral fee to Referral Attorney J.D., and fraudulently omitted that

13  defendant LAYFIELD intended to use thousands of dollars of the loan

14  proceeds to finance his move to Costa Rica;

15              (2)     Defendant LAYFIELD would not timely remit to

16  clients and Referring Attorneys their net case disposition proceeds

17  and bargained-for share of attorney's fees, respectively, because,

18  among other things, in order to misappropriate funds that he could

19  use to satisfy his own substantial financial liabilities, including

20  mortgages, payments for multiple luxury vehicles, personal guarantees

21  for L&B financial obligations, and L&B's obligations that defendant

22  LAYFIELD deemed necessary for repayment to keep L&B afloat and to

23  conceal defendant LAYFIELD's prior misappropriation of other clients'

24  funds, defendant LAYFIELD would:

25              (a)     Refuse to release net case disposition

26  funds and, in response to clients' complaints about non-payment, pay

27  those clients who threatened to report defendant LAYFIELD to the

28

State Bar for discipline and falsely assure and otherwise lull other clients regarding the promised disbursement of the funds;

(b)    Use newly-received client settlement proceeds to pay demands from other clients whose settlements had earlier been deposited into the IOLTA 2012 Account but which defendant LAYFIELD had already misappropriated;

(c)    Inflate line items on Closing Statements, including by causing approximately $371,000 in purported "costs" attributable to unrelated matters to be charged to clients as "miscellaneous" or similar line items that would reduce their net case disposition proceeds;

(d)    Fail to pay lienholders and other creditors whom L&B was obligated to pay under Retainer Agreements or pursuant to liens, thereby exposing clients not only to the loss of their settlement proceeds but also to liability for thousands of dollars in unpaid medical expenses and the impairment of, or other negative affect on, their credit;

(e)    Delay the payment of debts to creditors and net settlement proceeds due to at least one client, J.N., by purporting to take additional steps to preserve client funds, such as creating a trust that was, in fact, unnecessary, and created at a time when defendant LAYFIELD knew that he had already misappropriated J.N.'s settlement funds and that the IOLTA 2012 Account had insufficient funds with which to fund the newly created trust for the benefit of J.N.;

(f)    Dodge L&B client inquiries about the status of cases and payment of settlement proceeds, and dodge inquiries from L&B associate attorneys who were seeking to determine why their

1  clients had not been paid in order to conceal that there was

2  insufficient funds in the IOLTA 2012 Account from which such payments

3  should have been made, and defendant LAYFIELD had no reason to

4  withhold payment other than for his personal gain;

5       (g) Lull unpaid Referring Attorneys into a

6  false sense of security, thereby causing them to forbear from

7  asserting claims and reporting defendant LAYFIELD to the California

8  State Bar, by providing a purported "Irrevocable Pay Order" or

9  similar instrument to memorialize a pledge from upcoming settlement

10  funds that defendant LAYFIELD had no right to pledge or encumber,

11  and/or that defendant LAYFIELD had already caused to be pledged or

12  encumbered; and

13       (h) Conceal from L&B's clients and Referring

14  Attorneys that L&B was mired in internal conflicts; that L&B was

15  suffering from financial difficulty; and that defendant LAYFIELD

16  intended to close L&B, convert to his own use settlement proceeds due

17  such individuals, cause L&B to not pay its creditors, and relocate to

18  Costa Rica, where defendant LAYFIELD believed he would be beyond the

19  reach of his and L&B's creditors.

20       (3) Defendant LAYFIELD would not use case

21  disposition proceeds only as permitted by applicable laws, rules and

22  regulations governing the practice of law but would, among other

23  things, transfer millions of dollars from the IOLTA 2012 Account to

24  the 2004 Operating Account and to the 1924 Personal Account to pay

25  his own bills, including mortgage and car loans, and pay himself

26  compensation that exceeded what he was entitled to under his own

27  compensation agreement with L&B.

28

1         d.    To sustain the operations of L&B in order to increase

2    defendant LAYFIELD's opportunity to misappropriate yet more client

3    funds, defendant LAYFIELD would do the following things, among

4    others:

5         (1)    Enhance the likelihood that L&B employees would

6    remain with the firm by causing L&B to make "net" payroll payments,

7    namely, employee compensation without deducting and paying over

8    appropriate amounts to taxing authorities including the Internal

9    Revenue Service;

10        (2)    Misrepresent and omit material facts in connection

11   with obtaining an approximately $700,000 advance from Advance Lender

12   US Claims Opco LLC, by among other things, overstating the amount

13   that the applicant, MLH, was entitled to recover in the underlying

14   case, omitting reference to a Referral Agreement that would have

15   reduced by half L&B's permissible borrowing limit, and failing to

16   state that attorney's fees to be pledged were previously encumbered

17   in favor of yet another Advance Lender; and

18        (3)    Thwart the ability of at least one Advance Lender,

19   namely Advocate Capital, Inc., to enforce its lien to recover

20   millions of dollars in advances to L&B by draining L&B's bank

21   accounts.

C.   USE OF INTERSTATE WIRES

23.   On or about the dates set forth below, within the Central District of California and elsewhere, defendant LAYFIELD, for the purpose of executing and attempting to execute the above-described scheme to defraud, transmitted and caused the transmission of the following items by means of wire communication in interstate and foreign commerce:

| COUNT | DATE | ITEM WIRED |
|-------|------|-----------|
| ONE | 4/1/16 | Electronic communication from Orange County, California, to Esquire Bank in New York to deposit approximately $500,000 into the IOLTA 2012 Account from the settlement in the matter of S.A.R. v. Passoff, Orange County Superior Court case no. 30-2015-00807393-CU-PA-CJC, from which defendant LAYFIELD caused the transfers of funds in excess of the amount to which L&B was entitled to receive pursuant to the Retainer Agreement with client S.A.R. and by law |
| TWO | 4/1/16 | Electronic communication from Orange County, California, to Esquire Bank in New York to deposit approximately $750,000 into the IOLTA 2012 Account from the settlement in the matter of S.A.R. v. Passoff, Orange County Superior Court case no. 30-2015-00807393-CU-PA-CJC, from which defendant LAYFIELD caused the transfers of funds in excess of the amount to which L&B was entitled to receive pursuant to the Retainer Agreement with client S.A.R. and by law |
| THREE | 5/4/16 | Electronic communication from Orange County, California, to Esquire Bank in New York to deposit of approximately $175,000 into the IOLTA 2012 Account from the settlement in the matter of I.A. v. City of Anaheim, et al., Orange County Superior Court no. 30-2014-00762502-CU-PA-CJC, against which defendant LAYFIELD caused charges to be made for costs and expenses unrelated to client I.A.'s case |

| COUNT | DATE | ITEM WIRED |
|-------|------|------------|
| FOUR | 6/28/16 | Electronic communication from Orange County, California, to Esquire Bank in New York to deposit approximately $1,068,101 to the IOLTA 2012 Account from the settlement in the matter of T.B. v. Kaiser Hospital etc., et al., from which L&B was entitled to receive as attorney's fees only approximately $195,089 but from which defendant LAYFIELD transferred funds in excess of approximately $195,089 for purposes unrelated to client T.B.'s matter |
| FIVE | 8/15/16 | Email from L&B "litigation director" T.W. in Park City, Utah to attorney B.S. in Beverly Hills, California stating, among other things, that settlement funds paid in the matter of J.Y. v. Union Pacific Railroad, Los Angeles Superior Court no. BC 542593, "remain in trust at this time" when, in fact, such funds were not held in trust at such time |
| SIX | 8/17/16 | Electronic communication from Orange County, California, to Esquire Bank in New York to deposit approximately $991,249 to the IOLTA 2012 Account from the settlement in the matter of M.M. v. Ryder Truck etc., et al., Los Angeles Superior Court case no. BC538957, from which L&B was entitled to receive as attorney's fees only approximately $99,125 but from which defendant LAYFIELD transferred funds in excess of approximately $99,125 for purposes unrelated to client M.M.'s matter |
| SEVEN | 8/22/16 | Electronic communication from Orange County, California, to Esquire Bank in New York to transfer approximately $414,307 from the IOLTA 2012 Account to Bill.Com in Palo Alto, California, to pay bills including approximately $275,000 for the benefit of L&B client T.B. out of funds received from the settlement in the matter of M.M. v. Ryder Truck etc., et al., Los Angeles Superior Court case no. BC538957 |
| EIGHT | 8/26/16 | Electronic communication from Orange County, California, to Esquire Bank in New York to deposit approximately $500,000 to the IOLTA 2012 Account from the settlement in the matter of J.N. v. Ko, et al., Orange County Superior Court no. 30-2016-00865617-CU-PA-CJC |

| COUNT | DATE | ITEM WIRED |
|-------|------|------------|
| NINE | 8/29/16 | Electronic communication from Orange County, California, to Esquire Bank in New York to deposit approximately $3,400,000 to the IOLTA 2012 Account from the settlement of the matter of J.N. v. Ko, et al., Orange County Superior Court no. 30-2016-00865617-CU-PA-CJC, from which client J.N. was entitled to receive at least approximately $2,000,000 but, in fact, client J.N. received only approximately $25,000 and defendant LAYFIELD caused substantially all of the balance to be spent for matters, costs, and expenses unrelated to client J.N.'s matter |
| TEN | 9/16/16 | Email from L&B "litigation director" T.W. in Park City, Utah, to L&B client T.B. in Riverside, California with Closing Statement for the matter of T.B. v. Kaiser, etc., purporting to charge T.B. with bogus "Miscellaneous Expense" of approximately $25,624 |
| ELEVEN | 9/19/16 | Electronic communication from Orange County, California, to Esquire Bank in New York to transfer approximately $520,562 from IOLTA 2012 Account to Bill.Com to pay approximately $235,550 to attorney M.W. for attorney's fees and costs, and approximately $126,467 to attorney M.B. for attorney's fees and costs, in the matter of M.M. v. Ryder Truck etc., et al., Los Angeles Superior Court case no. BC538957, out of funds received from the settlement of the matter of J.N. v. Ko, et al., Orange County Superior Court no. 30-2016-00865617-CU-PA-CJC |
| TWELVE | 2/22/17 | Electronic communication from Orange County, California, to Esquire Bank in New York to deposit approximately $595,000 to the IOLTA 2012 Account from the settlement of the matter of P.C. v. Jaguar Land Rover North America, et al., Los Angeles Superior Court no. BC530746, from which Referral Attorney J.L. was entitled to receive a substantial referral fee, and client P.C. was entitled to receive approximately $359,942, but from which neither received anything because defendant LAYFIELD caused substantially all of the balance to be spent for matters, costs, and expenses unrelated to client P.C.'s matter |

| COUNT | DATE | ITEM WIRED |
|-------|------|------------|
| THIRTEEN | 2/24/17 | Electronic communication from Orange County, California, to Esquire Bank in New York to deposit approximately $1,350,000 to the IOLTA 2012 Account from the settlement of the matter of R.A.P. v. Avila, et al., Los Angeles Superior Court no. SC115454, from which Referral Attorney J.L. was entitled to receive a substantial referral fee, and client R.A.P. was entitled to receive approximately $742,442, but neither received anything because defendant LAYFIELD caused substantially all of the balance to be spent for matters, costs, and expenses unrelated to client R.A.P.'s matter |
| FOURTEEN | 4/20/17 | Email from L&B employee D.K. in Park City, Utah, to client F.H. in El Segundo, California, with attached Closing Statement that provided, among other things, that client F.H. was entitled to net settlement proceeds of approximately $180,439 from the matter of F.H. v. Pantoja, et al., Los Angeles Superior Court no. BC613035, notwithstanding that defendant LAYFIELD had already misappropriated F.H.'s net settlement proceeds and the balance in the IOLTA 2012 Account was at most approximately $72,973 |
| FIFTEEN | 5/23/17 | Email from L&B employee D.K. in Park City, Utah, to client F.H. in El Segundo, California, advising client that, with respect to paying client F.H. the net settlement proceeds from the settlement of the matter of F.H. v. Pantoja, et al., Los Angeles Superior Court no. BC613035, defendant Layfield "is going to conduct an accounting of all of the pending close outs in order to make sure that all client matters are being properly handled" and "he anticipates this accounting process to be complete no later than June 15 and then you will receive your final disbursement," notwithstanding that, at that time, defendant LAYFIELD had already misappropriated client F.H.'s net settlement proceeds and the balance in the IOLTA 2012 Account was substantially below the amount due F.H., namely, approximately $180,439, and was approximately $30,088 |

| COUNT | DATE | ITEM WIRED |
|-------|------|-----------|
| SIXTEEN | 6/7/17 | Email from defendant LAYFIELD in Orange County, California, to L&B "litigation director" T.W. in Park City, Utah, directing T.W. to provide a fraudulently misleading response toan underwriting inquiry from  broker Advanced Legal Capital, LLC, in Seattle, Washington, on behalf of Advance Lender US Claims Opco LLC, regarding the identity of co-counsel in the matter of Pineda v. County of Riverside, et al., Riverside Superior Court case nos. RIC1507590 and 1600228, that "[i]f the [Pineda] clients sign new rep agreements with [M]aximum [L]egal [H]oldings, LLC, then MLH has no fee splits with anyone. Obviously at the end of the day, L&B will honor any agreements it had." |
| SEVENTEEN | 6/8/17 | Email from defendant LAYFIELD in Orange County, California, to L&B "litigation director" T.W. in Park City, Utah, directing L&B employee V.M. to cause L&B clients to execute new retainer agreements in the matter of Pineda v. County of Riverside, et al., Riverside Superior Court case nos. RIC1507590 and 1600228 in order to fraudulently satisfy underwriting condition to obtain loan from Advance Lender US Claims Opco LLC |
| EIGHTEEN | 6/9/17 | Email from defendant LAYFIELD in Orange County, California, to broker Advanced Legal Capital LLC in Seattle, Washington, on behalf of Advance Lender US Claims Opco LLC, with attached, executed "Purchase, Sale, Assignment & Equitable Lien Agreement" and amended wiring instructions requiring the transfer of loan proceeds to the Layfield Personal USAA Account to enable defendant LAYFIELD to use loan proceeds for personal use |
| NINETEEN | 7/10/17 | Email from defendant LAYFIELD in Costa Rica to Referral Attorney D.S. in Los Angeles, California, with attached "Irrevocable Pay Order" to lull D.S. into forbearing from taking adverse action against defendant LAYFIELD regarding past due referral fees owed to D.S. in connection with the matter of R.A.P. v. Avila, et al., Los Angeles Superior Court no. SC115454 |

| COUNT | DATE | ITEM WIRED |
|---|---|---|
| TWENTY | 8/14/17 | Email from defendant LAYFIELD in Costa Rica to attorney K.M. in Sherman Oaks, California, to settle the matter of S.J. v. Shroyer, et al., Orange County Superior Court no. 30-2016-00845876-CU-PA-CJC, on behalf of plaintiff S.J. without S.J.'s knowledge or consent |
| TWENTY-ONE | 8/25/17 | Telephone call between Referral Attorney D.S. in Los Angeles, California, and defendant LAYFIELD in Costa Rica, to discuss, among other things, defendant LAYFIELD's paying past due referral fees to D.S. in connection with the matter of R.A.P. v. Avila, et al., Los Angeles Superior Court no. SC115454 |
| TWENTY-TWO | 8/26/17 | Email from defendant LAYFIELD employee V.M. in Costa Rica to Tharpe & Howell law firm in Sherman Oaks, California, with Notice of Settlement signed by defendant LAYFIELD, to settle the matter of S.J. v. Shroyer, et al., Orange County Superior Court no. 30-2016-00845876-CU-PA-CJC without S.J.'s consent |

COUNT TWENTY-THREE

[18 U.S.C. §§ 1341, 2(b)]

24.    The Grand Jury repeats, realleges, and incorporates by reference paragraphs 1 through 20, inclusive, and 22 of this First Superseding Indictment as if fully set forth in their entirety.

USE OF THE MAIL

25.    On or about March 9, 2017, within the Central District of California and elsewhere, defendant LAYFIELD, for the purpose of executing and attempting to execute the above-described scheme to defraud, willfully caused an envelope addressed to J.N. containing a cover letter and check for $25,000 (check number 0016555106) to be placed in an authorized depository for mail matter to be sent and delivered by the United States Postal Service, according to the directions thereon.

COUNT TWENTY-FOUR

[18 U.S.C. §§ 1028A(a)(1), 2(b)]

26.    On or about August 14, 2017, in Los Angeles and Orange counties, in the Central District of California, and elsewhere, defendant PHILIP JAMES LAYFIELD, also known as "Philip Samuel Pesin" ("LAYFIELD"), together with others known and unknown to the Grand Jury, knowingly transferred, possessed, and used, and knowingly and willfully caused to be transferred, possessed, and used, without lawful authority, a means of identification that defendant LAYFIELD knew belonged to another person, namely, the name of S.J., during and in relation to the offense of wire fraud, a felony violation of Title 18, United States Code, Section 1343, as charged in Count Twenty of this First Superseding Indictment.

COUNT TWENTY-FIVE

[18 U.S.C. §§ 1028A(a)(1), 2(b)]

27.   On or about August 26, 2017, in Los Angeles and Orange counties, in the Central District of California, and elsewhere, defendant PHILIP JAMES LAYFIELD, also known as "Philip Samuel Pesin" ("LAYFIELD"), together with others known and unknown to the Grand Jury, knowingly transferred, possessed, and used, and knowingly and willfully caused to be transferred, possessed, and used, without lawful authority, a means of identification that defendant LAYFIELD knew belonged to another person, namely, the name of S.J., during and in relation to the offense of wire fraud, a felony violation of Title 18, United States Code, Section 1343, as charged in Count Twenty-Two of this First Superseding Indictment.

24

COUNT TWENTY-SIX

[26 U.S.C. § 7201]

28.    The Grand Jury repeats, realleges, and incorporates by reference paragraphs 1, 2, 8, and 10 of this First Superseding Indictment as if fully set forth in their entirety.

29.    During the calendar year 2016, defendant PHILIP JAMES LAYFIELD, also known as "Philip Samuel Pesin," a resident of Coto de Caza, California, received taxable income, upon which there was income tax due and owing to the United States of America.  Knowing the foregoing facts and failing to make an income tax return on or before October 16, 2017, as required by law, to any proper officer of the Internal Revenue Service, and to pay the income tax to the Internal Revenue Service, defendant LAYFIELD, from in or about December 2015 through in or about December 2016, in the Central District of California and elsewhere, willfully attempted to evade and defeat the assessment and payment of the income tax due and owing by him to the United States of America, for the calendar year 2016, by committing the following affirmative acts, among others:

1.    On or about December 11, 2015, defendant LAYFIELD caused to be prepared, and signed, a purported employment agreement that purported to provide annual employment compensation to defendant LAYFIELD in the amount of $1 million, and specifically required that such compensation be paid pursuant to the payroll schedule for employees of defendant LAYFIELD's law firm, Layfield & Barrett, APC ("L&B"), with all employment tax deductions and withholding as required under law.

2.    In or about December 2015, defendant LAYFIELD directed L&B employee K.B. to cause defendant LAYFIELD to be compensated "off

1  payroll," or words to that effect, with the intent that defendant be
2  paid compensation for services without the deduction, withholding, or
3  paying over of employment taxes and other taxes as required under
4  law.

5        3.  On or about August 30, 2016, defendant LAYFIELD
6  caused approximately $100,000 to be transferred from the 2004
7  Operating Account, the source of which was a deposit of client funds
8  that had been deposited into the IOLTA 2012 Account, to J.T., to
9  satisfy defendant LAYFIELD's personal debt related to defendant
10  LAYFIELD's acquisition and maintenance of real property commonly
11  known as 31142 Via Colinas, Coto de Caza, California, without
12  reporting such transfer as income.

13        4.  On or about September 15, 2016, defendant LAYFIELD
14  caused approximately $50,000 to be transferred from the 2004
15  Operating Account, the source of which was a deposit of client funds
16  that had been deposited into the IOLTA 2012 Account, to J.T., to
17  satisfy defendant LAYFIELD's personal debt related to defendant
18  LAYFIELD's acquisition and maintenance of real property commonly
19  known as 31142 Via Colinas, Coto de Caza, California, without
20  reporting such transfer as income.

21
22
23
24
25
26
27
28

COUNT TWENTY-SEVEN

[26 U.S.C. § 7202; 18 U.S.C. § 2(b)]

At all times relevant to this First Superseding Indictment:

30.   Layfield & Barrett, APC ("L&B"), was a corporation doing business in Los Angeles, California, within the Central District of California.  L&B was in the business of providing legal services.

31.   Defendant PHILIP JAMES LAYFIELD, also known as "Philip Samuel Pesin" ("LAYFIELD"), controlled L&B and managed L&B as a "responsible person," that is, he owned and controlled L&B, had signatory and disbursement control over its bank accounts, including its payroll account, and signed L&B's tax returns and, thus, had the corporate responsibility to collect, truthfully account for, and pay over federal income taxes, Medicare and Social Security taxes (often referred to as Federal Insurance Contribution Act or "FICA" taxes) (collectively, "payroll taxes") for L&B employees.

32.   L&B was required to make deposits of the payroll taxes to the Internal Revenue Service on a periodic basis.  In addition, L&B was required to file, following the end of each calendar quarter, an Employer's Quarterly Federal Income Tax Return (Form 941), setting forth the total amount of wages and other compensation subject to withholding, the total amount of income tax withheld, the total amount of social security and Medicare taxes due, and the total tax deposits.

33.   During the second quarter of the calendar year 2017, a period from on or about April 1, 2017 to on or about June 30, 2017, inclusive, defendant LAYFIELD intentionally and willfully caused L&B employee R.M. to pay employees and, for such quarter, to fail to collect, account for, and pay over to the Internal Revenue Service

approximately $120,976.83 in payroll taxes related to such employees that were then due and owing to the United States of America.

COUNT TWENTY-EIGHT

[26 U.S.C. § 7203]

34.    During the calendar year 2016, defendant PHILIP JAMES LAYFIELD, also known as "Philip Samuel Pesin" ("LAYFIELD"), who was a resident of Coto de Caza, California, had and received gross income of at least approximately $1,700,000.  By reason of such gross income, defendant LAYFIELD was required by law, following the close of the calendar year 2016, and on or before October 16, 2017, to make an income tax return to the Internal Revenue Service Center, at Fresno, California, to a person assigned to receive returns at the local office of the Internal Revenue Service at Fresno, California, or to another Internal Revenue Service office permitted by the Commissioner of Internal Revenue, stating specifically the items of his gross income and any deductions and credits to which he was entitled.  Well knowing and believing all of the foregoing, defendant LAYFIELD willfully failed, on or about October 16, 2017, in the Central District of California and elsewhere, to make an income tax return.

FORFEITURE ALLEGATION ONE

[18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

35.  Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), in the event of the defendant's conviction under any of Counts One through Twenty-Three, inclusive, of this First Superseding Indictment.

36.  The defendant, if so convicted, shall forfeit to the United States of America the following:

a.  All right, title and interest in any and all property, real or personal, constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of any such offense.

b.  To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph a.

37.  Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b) and Title 28, United States Code, Section 2461(c), defendant shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of the defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished

in value; or (e) has been commingled with other property that cannot
be divided without difficulty.

FORFEITURE ALLEGATION TWO

[18 U.S.C. §§ 982 and 1029]

38. Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence in accordance with Title 18, United States Code, Sections 982 and 1029, and Title 28, United States Code, Section 2461(c), in the event of the defendant's conviction under Counts Twenty-Four and Twenty-Five of this First Superseding Indictment.

39. The defendant, if so convicted, shall forfeit to the United States of America the following property:

a. All right, title and interest in any and all property, real or personal, constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of the offense;

b. Any personal property used or intended to be used to commit the offense; and

c. To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs a and b.

40. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Sections 982(b) and 1029(c)(2), and Title 28, United States Code, Section 2461(c), the defendant, if so convicted, shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of the defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party;

1  (c) has been placed beyond the jurisdiction of the court; (d) has

2  been substantially diminished in value; or (e) has been commingled

3  with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION THREE

[26 U.S.C. § 7301 and 28 U.S.C. § 2461(c)]

41.   Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States will seek forfeiture as part of any sentence, pursuant to Title 26, United States Code, 7301, and Title 28, United States Code, Section 2461(c), in the event of the defendant's conviction under any of Counts Twenty-Six through Twenty-Eight, inclusive, of this First Superseding Indictment.

42.   The defendant, if so convicted, shall forfeit to the United States of America the following:

a.   Any property sold or removed by the defendant in fraud of the internal revenue laws, or with design to avoid payment of such tax, or which was removed, deposited, or concealed, with intent to defraud the United States of such tax or any part thereof;

b.   All property manufactured into property of a kind subject to tax for the purpose of selling such taxable property in fraud of the internal revenue laws, or with design to evade the payment of such tax;

c.   All property whatsoever, in the place or building, or any yard or enclosure, where the property described in subsection (a) or (b) is found, or which is intended to be used in the making of property described in subsection "a," with intent to defraud the United States of tax or any part thereof, on the property described in subsection "a;"

d.   All property used as a container for, or which shall have contained, property described in subsections "a" or "b;"

1          e.    Any property (including aircraft, vehicles, vessels,

2    or draft animals) used to transport or for the deposit or concealment

3    of property described in subsections "a" or "b," or any property used

4    to transport or for the deposit or concealment of property which is

5    intended to be used in the making or packaging of property described

6    in subsection "a;" and

7          f.    To the extent that such property is not available for

8    forfeiture, a sum of money equal to the total value of the property

9    described in this paragraph.

10     43.    Pursuant to Title 21, United States Code, Section 853(p),

11   as incorporated by Title 18, United States Code, Section 982(b) and

12   Title 28, United States Code, Section 2461(c), the defendant shall

13   forfeit substitute property, up to the total value of the property

14   described in the preceding paragraph if, as the result of any act or

15   omission of the defendant, the property described in the preceding

16   paragraph, or any portion thereof (a) cannot be located upon the

17   exercise of due diligence; (b) has been transferred, sold to or

18   deposited with a third party; (c) has been placed beyond the

19   jurisdiction of the court; (d) has been substantially diminished in

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

value; or (e) has been commingled with other property that cannot be divided without difficulty.

A TRUE BILL

/s/

Foreperson

NICOLA T. HANNA
United States Attorney

LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division

RANEE A. KATZENSTEIN
Assistant United States Attorney
Chief, Major Frauds Section

STEPHEN A. CAZARES
Assistant United States Attorney
Deputy Chief, Major Frauds Section

MARK AVEIS
IAN V. YANNIELLO
Assistant United States Attorneys