EXHIBIT A - Sentencing Letters

Philip Layfield

January 18, 2022

Hon. Michael W. Fitzgerald
United States District Judge
350 West 1st Street
Los Angeles, CA 90012

Re: *United States v. Layfield*, 18-cr-124-MWF

Dear Judge Fitzgerald:

I come before the Court a completely broken man. I realize that I have only myself to blame for being here. I think it is important for you to know how I got here, what's become of me, and what I've learned during this process which has been several years now.

**How I got here**

I started out an ambitious young lawyer. I graduated from the University of Arizona, and later went to law school at the University of San Diego. After I started working, I got a job at a major accounting firm, which paid for me to get an LLM in Tax. I felt I had a great future ahead of me. I had always done things the right way. I paid my student loans, paid all my taxes and lived a law abiding life at every level.

When I decided to start my own law firm it was with honorable intentions and lofty goals. Of course, I wanted it to be successful and earn great wealth for my firm and my employees and, of course, my family. I also wanted to help the firm's clients, all of whom had been wronged in some way. The long and short of it is: I tried to grow too big too quickly. I didn't allow the firm to stabilize and mature before I aggressively tried to enlarge the firm. This caused to the firm to incur a great deal of expenses. The firm grew from 40 employees to 400 very quickly. By doing this I put a lot of employees, clients and my family at risk. We couldn't keep up with the expansion and the expense. At some point, I began to cover firm costs with client funds from the trust account, always believing that, while there might be some delay, the clients would always be fully paid.

Hon. Michael W. Fitzgerald
January 18, 2022
Page 2

After the firm grew quickly, it became a vicious cycle: we needed to be bigger to earn more revenue to expand. It came a point that using client funds to cover costs and expenses of the firm became the norm, not the exception. During 2016-2017, it became unsustainable. Employees were upset, clients were upset. We started getting sued. My own actions led to the firm's inability to dig out of the hole I created.

During this period of time, through my arrest and after, I tried to evaluate what happened. I blamed everyone and everything from partners and employees to opposing counsel and even clients whose money I had used. At the end of the day, I fully understand I only have myself to blame. It was my decision to violate my clients' trust by using their funds without their permission or their knowledge that brings me before the Court. As the head of the firm and the ultimate decision-maker, the misappropriation of client funds–and all the consequences that followed–was caused by me and me alone.

After the collapse of the firm, I didn't just leave town with a big mess in my wake. I persistently tried to make things right. I tried to get employees, attorneys and clients paid. I was successful with some and not with others. At some point after the bankruptcy was filed, I lost the ability to fix the mess I had caused. The bankruptcy was tragic because millions of dollars went to the bankruptcy trustee instead of clients who were owed money. Again, while this was a situation I ultimately caused, it was not my goal to enrich the bankruptcy trustee at the expense of clients.

**What's become of me**

I have been in actual custody for nearly a year, if you include the six months from the time I was arrested until I was ultimately released on bail and the nearly six months since my remand. Even prior to this case being filed, the consequences of my actions have been severe.

### Professionally

Based on my actions trying to keep my firm going, I've lost my firm and all its assets, my law licenses (in two jurisdictions), my CPA license, and my professional reputation. After my arrest, I tried to start over as a truck driver. I took a class and

Hon. Michael W. Fitzgerald
January 18, 2022
Page 2

got licensed. I later helped my wife start a trucking business, hoping that would support my family if I were convicted. However, that too collapsed when the trial approached and I could not assist with the operation of the company.

In short, my entire professional life has literally vanished.

**Personally**

Personally, nearly all my friends and much of my family have abandoned me over the course of this case. During the pendency of the case, my wife and daughter (who is still a minor) were supportive and eager to see me through this crisis in our family. After I was convicted in remanded, my wife stopped communicating with me and left Nevada for Florida with my daughter. I have not spoken or heard from my wife or daughter since August of last year. Currently, I don't even know where they are.

At the start of this case, the government alleged I had secret stores of cash in foreign bank accounts, having fleeced my clients. Nothing could be further from the truth. In fact, I poured a lot of personal assets into trying to save the firm and pay people what they were owed. In the end, I literally have no assets at all. I've lost my home, all my possessions and everything I've ever worked for. Currently, I rely on my father to send me small bits of money to buy commissary items at the jail.

When I'm released from jail I will have to rebuild my life from zero.

I don't recount what I've lost to evoke any sympathy. I merely want the Court to understand that I recognize how catastrophic the consequences of my actions have been.

**What I've Learned.**

It is important for the Court to understand that I am not unrepentant and defiant. Rather, I understand completely that my actions have caused a lot of harm and that only I am responsible for having caused those harms. I intend to rebuild my life both personally and professionally. I intend to do everything in my power to

Hon. Michael W. Fitzgerald
January 18, 2022
Page 4

make the victims of my conduct fully whole. I intend to demonstrate my remorse rather than merely state it.

    One cannot endure everything I've been through over the past 4-5 years and not learn humility. I have had nearly everything taken from me. I do, however, intend to rebuild my life after I'm released from prison. It is difficult to see what that will look like at the moment, but it will be a slower, more modest existence that I've lived since I became a lawyer. I do hope to reconnect with my daughter, whom I haven't spoken to or seen since I was remanded.

    In conclusion, I hope that you can see I have some capacity for good in me such that you will not want to extinguish the better part of the rest of my life. A more mitigated sentence will permit me to accept the consequences of my actions without having to demolish the rest of my life.

                                            Sincerely,

                                            Philip Layfield

James E. Layfield

January 18, 2022

Hon. Michael W. Fitzgerald

United States District Court

351 West First Street

Los Angeles, CA 90012

Dear Judge Fitzgerald:

  My name is James E. Layfield. I am Philip Layfield's father. For the past 19+ years, I have lived in Millsboro, Delaware with my wife of 38 years, Christine (Philip's stepmother). I was born and raised in Sussex County, Delaware.  I have two sisters and a brother that have lived in Sussex County their entire lives. They all have children, Philip's cousins, and most of them live in the area. One of Philip's cousins is a police officer for the Town of Lewes, DE and his wife is a Delaware State Trooper. The Layfield family and the Mitchell family (my mother's family) have lived in this area for more than 150 years.

  I am aware of the crimes for which Philip has been found guilty. Taking and using other people's money is totally out of character for Philip. He has always been a trustworthy person, a man of his word. The actions that led to this case were out of character for him and I know he has suffered personally for his actions and sincerely regrets the actions he took. The actions were taken out of desperation to save his law firm. He realizes those actions should not have happened.

  From my conversations with Philip after he was arrested, I know that he is remorseful for the actions that led to this case. Knowing Philip the way I do, I don't believe he ever intended to harm people or steal from people. I truly believe he got into a bind and used poor judgment to try to pull himself

out of a deep hole. I think that Philip thought things would work out and it would never get to the point where people were harmed. Prior to this case, Philip was a successful plaintiff's attorney helping many clients obtain justice. He was also very active in charitable organizations as well as professional organizations.

      Philip's family in Delaware loves him and supports him during this difficult period. He will continue to receive our support throughout this process. We will gladly welcome Philip into our home once he has served his time for his actions. He is already preparing for a new career once he is released. We have ordered books for him to read and study while he is serving his sentence. We eagerly await having him home.


Sincerely,


James E. Layfield

Hon. Michael W. Fitzgerald
United States District Judge
350 West First Street
Los Angeles, CA 90012

January 20, 2022

RE: PHILIP LAYFIELD

My name is Steve Massas. I am a former Region Director of Contracts for an agency of the Department of Defense and a former VP of Contracts and Compliance at ITT Night Vision.

I am also Philip Layfield's uncle and without hesitation acted as a surety based on my lifelong observations of his promises made and kept. I have watched him shake off the trauma of his parent's divorce and overcome the constant passive aggressive behavior toward him by his step father. In spite of the mental abuse and lack of a guiding hand, Phil successfully graduated from college and law school while also gaining a CPA. The man who committed the acts for which he was convicted is not the Philip Layfield that I know. Those acts were totally out of character and unlikely to be repeated. The Philip I know is kind and caring. When his grandfather died, Philip sent many months with his grandmother offering assistance and advice, greatly helping her navigate that strenuous period in her life, and was in constant contact with his grandmother after she moved east to live with my wife and me. The Philip I know rented a motor home and drove across country at Thanksgiving after his flights were cancelled because he promised his grandmother he'd be there. The Philip I know is a kind and loving father to his daughter Campbell, now 15 years old and in need of a strong male figure in her life to advise her through the treacherous middle and late teen years.

In my conversations and correspondence with Philip since his August incarceration, he has expressed regret and remorse that his actions have caused pain to others. Although no longer be able to practice law, he has post incarceration plans that will allow him to be self-reliant and also contribute to his daughter's well being. Those plans also include relocation close to family who will provide the support necessary to ensure his successful reentry and transition to society. I can see that Philip has learned a great deal as a result of his current situation together with an insight of what is truly important in life. I believe that any consideration which would help speed his re-entry to society would be a benefit in the long run. Thank you for your time.

*[signature]*

Steve Massas

Donna Sinnamon
Lewes, Delaware

January 26, 2022

Hon. Michael W. Fitzgerald
United States District Judge
351 West First Street
Los Angeles, CA 90012

Dear Judge Fitzgerald:

    I am writing to you on behalf of Philip James Layfield. I am Phillip's Aunt. I am a retired Veterinary Biologics Specialist and I worked mainly in poultry biologics and worked with the US Dept. of Agriculture for many years through the companies at which I worked.

    I did not have children until later in life, but enjoyed being with my siblings' children, including Philip. I was very involved with Philip's life. My connection with Philip was cut short when his parents divorced, but I reconnected with Philip in 2009. It was such a great reunion because Philip and his sister were like my own kids to me when they were young.

    Philip and I have grown very close in the last several years. We had enjoyed making new memories. Philip is a very loving person and such a good father to his daughter, Campbell. He loves his family very much and their extended family, including three dogs.

    Philip has told me about his actions in this case and what occurred. He was very honest and forthcoming to me about what happened. I'm well aware he used funds belonging to his clients for his business and personal use. I certainly don't condone his actions, but know that they did not come from an evil place or with an intent to cause harm to people. I know that Philip was very ambitious and wanted to have a successful law firm, but I will never believe that he wanted to harm people, including his clients. I believe he got in over his head, as the old saying goes. He tried to hang on, but made poor judgments.

Hon. Michael W. Fitzgerald
January 26, 2022
Page 2

    I appreciate your time in considering my letter. I respect that you will make a fair decision.

                                          Donna L. Sinnamon